IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 23-cv-2254**

MARK BARRINGER,

    Plaintiff,

v.

REGENTS OF THE UNIVERSITY OF COLORADO d/b/a UNIVERSITY OF COLORADO HOSPITAL, a body corporate,

    Defendant.

## COMPLAINT

Plaintiff submits the following Complaint against Defendant.

### I. PARTIES

1. Plaintiff Mark Barringer ("Barringer") is an individual who resides in Commerce City, Colorado.

2. Defendant Regents of the University of Colorado d/b/a University of Colorado Hospital ("CU") is a body corporate with an address of 12605 East 16th Avenue, Aurora, Colorado 80045.

### II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

1

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. All prerequisites or conditions precedent to the institution of this suit have been met.

6. Plaintiff filed a timely charge of discrimination.

7. On June 9, 2023, the EEOC issued a Notice of Right to Sue in regard thereto. This action was timely filed within ninety days of Plaintiff's receipt of the Notice of Right to Sue.

### IV. GENERAL ALLEGATIONS

8. Plaintiff seeks relief against Defendant on the ground that Defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S. § 2000e *et seq*. ("Title VII").

9. Defendant is an employer within the meaning of Title VII.

10. The timeliness and jurisdictional requirements of Title VII have been met.

11. Barringer was hired by the University of Colorado Anschutz Medical Campus' Facilities Department on December 14, 2015, as a Utility Plant Operator I.

12. At the time of his termination, Barringer had no documented performance deficiencies.

13. On September 1, 2021, CU implemented Campus Administrative Policy Statement 3012, COVID-19 Vaccination Requirement and Compliance

("Policy 3012"), which required all employees to attest that they had received a COVID-19 vaccine.

14. Policy 3012 stated, in part, that employees seeking a religious exemption may submit such "based on a person's religious belief whose teaching are opposed to all immunizations."

15. Barringer is a member of a protected class based on his religion (Christian).

16. Barringer reported to Robert Ratliff, Utility Plant Operator II. Jay Campbell was the Department's Associate Vice Chancellor for Administration and Finance. Robyn Cooper was the Department's HR Team Lead.

17. Barringer submitted a religious exemption request in response to the COVID-19 vaccination requirement on August 26, 2021.

18. On August 30, 2021, Mr. Campbell sent Barringer an email allowing him to continue working on campus that stated:

> What I can confirm is you will still report to work on Wednesday and continue your duties as assigned. For the time being nothing is changing regarding your employment status.
>
> However, based on your status as an unvaccinated individual, and one without an approved exemption, you must comply with the following requirements on a daily and weekly basis.
>
> \* Daily
> o You must complete the daily online attestation form each day you come to campus. **This is no different than what you should have been doing for many months now, and it must continue**. There will be cross checks against campus badge access records to let us know if this is skipped.
> o Current campus COVID protocols must be adhered to; including wearing masks at all times indoors, and outdoors when not able to maintain physical distancing from others.

\* Weekly
o You will be directed by campus health officials to complete weekly COVID testing. More details will come this week about how to sign up for and complete this process.

(emphasis added)

19.     As Mr. Campbell said in this communication, Barringer had been observing these safety protocols for "many months." Indeed, he has been working on campus for a year and half after the COVID-19 emergency was declared following these protocols.

20.     On September 1, 2021, CU sent to Barringer a form request for information. The request for information stated:

You have submitted a request for an exemption from the vaccination requirements set forth in the campus policy based on a religious exemption. In order to evaluate that request we need you to respond completely to the questions below within 2 business days of receipt of this email. After this information has been reviewed you will be advised as to whether you request for an exemption has been approved or rejected.

1. Please explain why your sincerely held religious belief, practice, or observance prevents you from getting the vaccination for which you are requesting an exemption? Please include a detailed response for each vaccine for which you are requesting an exemption.

2. Have you had an influenza or other vaccine in the past? How does this differ?

21.     On September 3, 2021, Barringer replied as follows:

Let me begin by saying that I believe this whole process is an invasion of my privacy and personal beliefs and am offended that I am forced to answer these inappropriate questions and threatened with termination if I don't comply.

With regard to your first question, no one has the right to pass judgement on my or anyone else's religious beliefs whatever they may be. An employer does not have the right to decide if they think my religious belief is or is not

4

acceptable and then either approve or reject those beliefs. It's called separation of church and state. That being said, I will answer the question by saying that all three vaccines are the same. In my opinion, none of them are safe. My God says turn away from evil and live and that is exactly what I shall do. In your rush to try to get me vaccinated, you forgot to ask if I have already contracted covid 19. It is very likely that I have and if so, why would I receive a vaccine for something I already have natural immunity to? While the vast majority of the population was working from home during this alleged pandemic, I was physically going to work… business as usual. People like myself kept this place running and never once got any acknowledgment for that sacrifice so why all of a sudden am I being threatened with termination if I don't 'comply' with something that I don't believe in? My religious beliefs didn't matter to you then so why should they matter to you now? Why does this company all of a sudden believe that if I'm not vaccinated, I'm going to suddenly become deathly ill or infect others. What was being perceived as a global pandemic last year has not changed at this current date other than a different strain has supposedly been detected and just like the flu – many, many other strains will be "detected" so where will all this stop????

With regard to your second question, my medical history is private. Only I have the right to choose what I do or don't put in my body.

22. On September 6, 2021, CU denied Barringer's religious exemption request. CU denied Barringer's exemption on the following grounds:

Your exemption request has been denied because it does not comply with the campus policy, which only recognizes religious exemptions based on a religious belief whose teachings are opposed to all immunizations.

23. CU's ground for denying Barringer's exemption was wildly unconstitutional in that CU arrogated unto itself the right to decide which religious beliefs were "acceptable" grounds on which to object to its vaccine mandate. Indeed, apparently recognizing that its policy was unlawful, CU later amended the policy.

24. CU never reevaluated its denial of Barringer's religious exemption request under its amended policy.

25. On September 6, 2021, CU requested Barringer to provide proof of vaccination within 48 hours and informed him that failure to comply could result in disciplinary action, up to and including, termination.

26. On September 16, 2021, Mr. Campbell sent Barringer an official meeting notice to determine whether there was cause to terminate his employment for his refusal to take the COVID-19 vaccine.

27. On September 24, 2021, Mr. Campbell met with Barringer.

28. On September 30, 2021, Mr. Campbell sent Barringer a letter in which he terminated Barringer's employment for his refusal to take the COVID-19 vaccine.

29. Barringer had been working at CU without being vaccinated since March 2020 when the COVID-19 emergency was announced and posed no risk of harm to anyone.

30. From March 2020 to September 2021, CU never objected to Barringer working on the campus on the ground that it was unsafe.

31. CU's assertion that Barringer's presence was unsafe was false. Barringer worked with only one other person and most of the communication with that coworker would be done via two-way radios. Barringer did not work all over the campus. He worked only at the central utility plant, which is a very large stand-alone building in which only two people (who had little contact with each other) worked, and he had no contact with other university staff.

32. Nothing changed in September 2021 that all of a sudden made it unsafe for Barringer to work on CU's campus as he had done for the previous year and a half since the COVID-19 emergency was announced.

33. CU has no evidence whatsoever that anyone was harmed by Barringer's presence on the campus from March 2020 to September 2021.

34. CU never entered the interactive process to determine if it could provide a reasonable accommodation to Barringer's religious beliefs.

35. CU never explained why it could not continue to accommodate Barringer's physical presence on CU's campus through, for example, following the safety protocols that had been deemed sufficient for the previous year and half.

36. Barringer has a medical condition that impairs a major life function, to wit, breathing.

37. CU has asserted that Barringer never requested an accommodation for his disability, but that is false.

38. When CU's mask mandates began in May of 2020, Barringer realized that he was having a difficult time breathing with the mask on, and even after taking the mask off at the end of the workday, he could not seem to catch his breath. He had a discussion with Mr. Ratliff about this at the time.

39. The following month (i.e., June 2020), Barringer requested an accommodation for his disability. At that time he had a discussion with Mr. Ratliff and requested that he place him on a different shift so that he wouldn't have to

wear a mask all shift long, as it made it very difficult for him to breathe. At that time, Mr. Ratliff put Barringer on swing shift as an accommodation.

40. Barringer submitted a medical exemption request in response to the COVID-19 vaccination requirement on August 26, 2021.

41. Barringer asked Ms. Cooper for additional time to submit medical paperwork because he was having difficulty scheduling medical appointments. She said that it shouldn't be a problem to extend the time but to keep them informed of his progress.

42. On September 23, 2021, Barringer provided to CU information from his health care provider stating that he had been diagnosed with, among other things, COPD with emphysema.

43. Thus, CU knew Barringer was a person with a disability under the Americans with Disabilities Act as early as May 2020, and it had medical documentation of the disability.

44. Nevertheless, despite knowing that Barringer was a person with a disability, CU never entered into the interactive process with him.

45. Barringer was able to perform his job duties with a reasonable accommodation.

46. Knowing that Barringer was a person with a disability, CU refused to continue to offer him the same accommodation it had granted to him in May 2020. Instead of complying with its obligations under the ADA, CU terminated the accommodation and fired Barringer.

## V.  FIRST CLAIM FOR RELIEF
**(Violation of Title VII – Religious Discrimination Failure to Accommodate)**

47. Plaintiff hereby realleges the above allegations as if fully set forth herein.

48. Title VII prohibits Defendant from discriminating against its employees on the basis of their sincerely held religious beliefs.

49. Plaintiff holds a sincere religious belief that precludes him from receiving a COVID-19 vaccine.

50. Plaintiff informed Defendant of those beliefs and requested a religious exemption and reasonable accommodation from the vaccine mandate.

51. Defendant failed to engage in the interactive process with Plaintiff regarding his religious accommodation request.

52. Irrespective of the interactive process, Defendant failed to provide Plaintiff with a religious exemption and reasonable accommodation, thereby discriminating against Plaintiff because of his religious beliefs.

53. Plaintiff's religious belief about receiving a COVID-19 vaccine was the basis for Defendant's discriminatory treatment.

54. Defendant's failure to even consider accommodating Plaintiff's religious beliefs under any circumstances whatsoever harmed and will continue to harm Plaintiff.

55. Accommodating Plaintiff's religious beliefs would not have resulted in an undue hardship on Defendant or its business.

56. Plaintiff is entitled to all legal and equitable remedies available for Title VII violations, including compensatory damages.

## SECOND CLAIM FOR RELIEF
### (Violation of Title VII – Religious Discrimination Wrongful Termination)

57. Plaintiff hereby realleges the above allegations as if fully set forth herein.

58. Title VII make it unlawful for an employer to discharge any individual, or to otherwise discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's religion.

59. At the time of the discrimination, Plaintiff was Defendant's employee and qualified in all respects to do his job competently. Plaintiff had a sincere religious objection to receiving the COVID-19 vaccines.

60. Defendant terminated the employment of Plaintiff after he refused to violate his conscience by subjecting herself to Defendant's vaccination mandate.

61. Defendant's termination of Plaintiff was an adverse employment action that materially and adversely changed the overall terms and conditions of his employment, in violation of Title VII.

62. Plaintiff is entitled to all legal and equitable remedies available for Title VII violations, including compensatory damages.

## VII. THIRD CLAIM FOR RELIEF
### (ADA)

63. Plaintiff incorporates herein by this reference the allegations contained within the foregoing paragraphs.

64. As demonstrated by his long-term and successful performance with Defendant, Plaintiff was qualified for his position.

65. Plaintiff placed Defendant on notice that he had a disability within the meaning of the ADA.

66. At all relevant times, Plaintiff was a qualified individual with a disability and was qualified for his position, provided that his disability was reasonably accommodated.

67. Defendant could have accommodated Plaintiff so that he could have continued to work with an accommodation but failed and refused to do so.  Indeed, Defendant had been providing to Plaintiff the very accommodation he requested (working swing shift while observing safety protocols) for one and a half years when it terminated him.

68. Defendant could have accommodated Plaintiff without undue hardship, but instead pretextually terminated his employment by falsely asserting that he was a danger to others and that the accommodation it had been providing to him for no cost to it for a year and a half was an undue hardship.

69. Defendant's actions violated the ADA.

70. As a direct and proximate result of the foregoing violations of the ADA, Plaintiff has sustained economic and non-economic damages, including but not limited to, a loss of employment compensation and other benefits, lost interest on

that income and benefits and a loss of retirement benefits and compensatory damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court:

A. Award Plaintiff backpay, front pay, and other compensatory damages suffered by Plaintiff, including future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and nonpecuniary losses (or, in the alternative, reinstatement with backpay and other damages);

B. Award Plaintiff the reasonable costs and expenses of this action, including reasonable attorneys' fees as required by law;

C. Award prejudgment and post judgment interest, as provided for by law; and

D. Grant such other and further relief as the Court deems equitable and just under the circumstances.

## JURY DEMAND

Plaintiff requests trial by jury on all claims.

*/s/ Barry K. Arrington*
_____

Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge Colorado 80033
Voice:  (303) 205-7870; Fax:  (303) 463-0410
Email:  barry@arringtonpc.com

Shaun Pearman
The Pearman Law Firm, P.C.
4195 Wadsworth Boulevard

Wheat Ridge Colorado 80033
Phone Number: (303) 991-7600
Fax Number: (303) 991-7601
E-mail: shaun@pearmanlawfirm.com

*Attorneys for Plaintiffs*

13